INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. J. M. MILLS.

Decided December 23, 1903.

**1.—Practice—Expert Testimony.**

The rule as to expert testimony is that the subject of inquiry is one of science, skill or trade, or questions of like kind, about which the expert, by his previous training, habits or study, has more skill and knowledge than jurors of average intelligence may be presumed generally to possess. If the subject of inquiry is one that may be presumed to be within the knowledge and common experience of the average man in the ordinary walks of life, the opinions of experts are not admissible.

**2.—Same—Hypothetical Question.**

Questions addressed to experts should be based upon a hypothetical statement of facts, and it is the privilege of the person asking the question to assume any state of facts which the facts tend to prove. An opinion given by an expert on a given statement of facts, which the testimony tends to prove, goes to the jury as any other fact, to be accepted or rejected as the jury may deem proper. Expert testimony held properly admitted under these rules.

**3.—Practice—Charge.**

See charge held not obnoxious to the objection that it is misleading.

**4.—Same—Argument of Counsel—Bill of Exceptions.**

Alleged abuse of the privilege of argument by counsel can not be revised in the absence of bill of exception.

**5.—Damages—Evidence.**

On the evidence held that the verdict is supported and is not excessive.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*Hicks & Hicks,* for appellant.

*John Sehorn,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued to recover damages arising out of an injury inflicted on his knee through a defect in an angle-cock, while he, in discharge of his duties as a brakeman, was endeavoring to cut off the air on a freight train. He recovered a verdict and judgment for $7500.

It appears from the evidence that an angle-cock is a portion of the air brake attachments on a train. The air travels from the locomotive through iron pipes and hose couplings to the rear of the train. The iron pipes run underneath the cars, and at each end of the pipes at the ends of the cars there is attached an angle-cock, which is a kind of faucet for cutting off or turning on the air so that it may travel through the pipes and connecting hose. The hose at one end is attached to the angle-cock and at the other is attached to the hose belonging to another car. To uncouple a car the angle-cocks on both cars are turned to cut off the air and then the hose on the two cars are uncoupled or pulled apart. If the air is not cut off by the angle-cock the hose will whip around as one does when filled with a stream of water. Appellee attempted to cut off the air by means of the angle-cocks, and if every-

thing had been in working order that action should have cut off the air. However, the angle-cocks were defective and did not cut off the air, and when appellee attempted to uncouple the hose the air in it jerked the hose out of his hands and it struck appellee on the cap of his knee with such force as to break it. The injury stiffened the leg so as to render appellee a cripple for life. Appellee was ignorant of the defects in the angle-cocks.

The first, second, third, and fourth assignments form the basis for the contention that it was error to permit the following question to be propounded to and answered by four different witnesses: "Assuming that the air is cut off at the angle-cock by a brakeman as he goes in to uncouple the hose and it is jerked out of his hand, what does that indicate in reference to the angle-cock?" The answer was: "It would indicate that there was a leak." The question as copied in the brief leaves it in doubt as to whether the angle-cock or the hose was jerked out of the brakeman's hands, but the bills of exception show that it was the hose that the brakeman sought to uncouple, after cutting off the air at the angle-cock, and that the hose was jerked violently out of his hand. The objections urged to the question and answers were, that the question was not such as could properly be asked an expert witness, and did not elicit such facts as can be proved by expert testimony and called for the opinions of witnesses on a state of facts which it is the province of the jury to decide. It is not contended in this court that the witnesses were not experts, the sole proposition being that a hypothetical question which assumes the very fact in controversy and which would elicit an answer that would usurp the province of the jury in drawing deductions from the facts is improper. The proper test of the admissibility of the testimony of experts is not made by appellant, for the test is not whether or not the opinion of the expert would prove the very fact to be found by the jury. The object of all testimony is to prove the very fact to be found by the jury, and it is no usurpation of the powers of a jury to prove that fact. In order to obtain a certain opinion from an expert it is absolutely essential to assume the existence of the facts necessary to elicit the opinion, and in order that the opinion should prove of any value it should be the very one that it is desired the jury should form.

The rule as to expert testimony is that the subject of inquiry is one of science, skill or trade, or questions of like kind, about which the expert, by his previous training, habits or study, has more skill and knowledge than jurors of average intelligence may be presumed generally to possess. Ferguson v. Hubbell, 97 N. Y., 513. If the subject of inquiry is one that may be presumed to be within the knowledge and common experience of the average man in the ordinary walks of life, the opinions of experts are not admissible. Under such circumstances the jury is just as capable of passing upon the facts and forming proper opinions thereon as the expert. Railway v. Sweeney, 24 S. W. Rep., 947.

In this case the testimony was as to the operation of parts of a train of which none but those who made such things a study or who were accustomed to operating them could possibly have any knowledge.

Questions addressed to experts should be based upon a hypothetical statement of facts, and it is the privilege of the person asking the question to assume any state of facts which the facts tend to prove. An opinion given by an expert on a given statement of facts, which the testimony tends to prove, goes to the jury as any other fact, and may be accepted or rejected as may be deemed proper and right by the jury.

The court charged the jury as follows: "On the other hand, if you do not believe from the evidence that said angle-cock was in a defective condition and that the defendant was guilty of negligence in permitting it to be in the condition you find it was in, you will find for the defendant." The assignment assailing this charge is that "the court erred in the third paragraph of its charge to the jury." The only proposition thereunder is: "A paragraph of a charge which may be correct as a proposition, but which is calculated to mislead the jury, is erroneous and should not be given." That proposition may be true, but it is not apparent how a charge which informs the jury to find for appellant if certain facts are not proved could mislead them. Appellant contends that the clear inference is that if the angle-cock was defective and permitting such defect was negligence upon the part of the appellant that the jury should find for appellee. How this would mislead the jury appellant makes no attempt to show, and it is only a surmise of this court that appellant thinks it misled the jury because no reference was made to the question of contributory negligence or assumed risk on the part of appellee. If this be the ground of complaint, we do not think it misled the jury, for when read in connection with other paragraphs of the charge, preceding and succeeding, it clearly appears that a recovery on the part of appellee is conditioned on his being free from having contributed to his injury or having assumed the risk of the defect.

The charge on the measure of damages clearly defines the elements of damages which the jury were to consider in arriving at a verdict.

Appellant requested a special charge to the effect that the court had no power to compel the plaintiff to submit to a physical examination to ascertain the extent of his injuries, which was prefaced with a recital that counsel for appellee had argued that appellant had not made a motion to have appellee examined by a physician appointed by the court. There was no bill of exceptions taken to the argument of counsel, and there is nothing to indicate that such argument was made except the recital in the rejected charge. The presumption is that the trial judge rejected the charge because there was no such argument made.

If the physicians who testified for appellee are to be credited, the blow inflicted by the hose upon the knee of appellee stiffened the joint

and the injury is permanent and will incapacitate him from the use of his leg. According to the testimony of appellee he was confined to the house for three months and during that time the leg was painful to him. He can not walk without crutches. The injury was inflicted in January, 1902. Appellee was at that time 36 years of age and was, earning from $75 to $80 a month. The verdict can not be held to be excessive.

The case of Railway v. Somers, 78 Texas, 441, is cited by appellant as being decisive of this case, and language from that opinion is quoted as follows: "There was no evidence to support his case but his own. It seems to us, therefore, that the jury must have been controlled in their verdict more by their sympathy for a hard-working, zealous man, injured in a dangerous employment, then by the law of the case as applied to the evidence." This language was not intended as an enunciation of a general rule that a plaintiff can not recover damages if no one testifies as to the circumstances of the injury except himself, but applies only to the facts of that case in which a plaintiff was his sole witness and had made contradictory statements and had been contradicted by two disinterested witnesses. A man is not rendered unworthy of belief merely because he has no one to corroborate him as to the manner in which he received his injuries. The judgment is affirmed.

*Affirmed.*

Writ of error refused.